All right, back on the record then. The next case up for argument this morning is Hutnick v. Watkins, Clause 5-10-0137. Now in this particular case, Justice Goldenhurst is the third judge assigned to the panel this morning. However, Justice Goldenhurst very recently recused himself from this case. Another judge has not yet been assigned, but will be soon. That judge will be provided with a copy of the briefs and be able to listen to the oral arguments, and we'll proceed from there. So, Mr. Hutnick? May it please the Court, Mr. Barrett, Mr. Reed. Your Honor, this case comes to the Court from St. Clair County. The plaintiff originally filed a lawsuit seeking to enforce a promise for funds to purchase a house. While the case was pending, the defendant died. At that time, the plaintiff moved pursuant to the rules for his substitution. Judge Walter Brandon denied that motion. An appeal was taken within the time permitted. This Court, on appeal, reversed that decision and sent the case back to St. Clair County for further proceedings. Ultimately, in pursuant to the Rule 23 order, Dennis Watkins was substituted for the deceased. At a certain point in the case, both sides filed for motions for summary judgment. And on March 15, 2011, Judge Brandon, without giving reasons, denied plaintiff's motion for summary judgment and granted defendant's motion for summary judgment. The notice of appeal was filed March 19, 2011. The review by this Court, of course, is de novo, and the Court, of course, can't perceive sul ponte executions. The plaintiff's position is that, as a practical matter, the case centers on the Dead Man's Act and whether Dennis Watkins, who was substituted for the deceased, has the right to raise it. The Dead Man's Act refers to a, quote, representative of whomever, and then goes on to define representative. The Court will permit me a lack of sophistication by quoting this. Any executor, administrator, heir, or legatee of a deceased person, and any guardian or trustee of any such heir or legatee, or a guardian or guardian ad litem for such a person under a legal disability, which I take to mean that there is some entity, whether it's in a state, whether it's a trust, or a person, something existing. It would define me, and I have difficulty how you would represent something that does not exist. Now, Dennis Watkins does not end with these things. In fact, the order that was entered, for whatever reason or reasons by Judge Frantz, it doesn't appoint him as a representative. It merely says he is substituted. It doesn't say why. It doesn't define responsibility. So he was not appointed, even though required to be appointed as a representative, as the Dead Man's Act statute requires. That alone leaves a question as to why he's in that court, what role he has. But even if this court were to find, through a generous interpretation of the word substitution, that he was a representative, then the court would have to find, I believe, that he's the representative of some entity or person as required by the Dead Man's Act. And so the question comes up, where in the record, as it were, or in any of the filings, is there an identification by the defendant of the existence of an estate, of a trust, an heir, legatee, or any other entity we might think about in our wild imagination? It isn't there, because it doesn't exist. If it doesn't exist, then I think it is a fair question to ask, who does Mr. Watkins represent? Assuming the court finds that he is a representative. If he doesn't represent anyone or anything, I think it is also a fair question to say, who's giving instructions how to handle a case? It seems so obvious and unsophisticated that for there to be a maturity-fied relationship, there is a client giving instructions or something like that. But if we don't have an estate here, we don't have a trust, we don't have anything. Who is taking positions and on behalf of whom? I think that is a fair question. And since he doesn't exist as a representative, he can't be taking any position on anything. Now, if he was a representative of the estate or the trustee or something like that, that would be a different story. But I say again to the court that nowhere in the record does anything like that appear. But if the court, again, is generous in its approach to representing something, though I don't know what it would be, then we next turn to that aspect of the Dead Man's Act, the case law, I'm not going to stand up here and try to be bright and name specific cases, but all the ones I have read where they talk about traditional reasons to uphold the Dead Man's Act, as for fear of someone coming in and depleting assets. Okay, that makes common sense to me. And generally that's the pattern throughout all the case law that I've read, and I don't think that's a new case law that's been going on for generations. The problem is, if there are no assets, because there is no estate or no trust or anything else, there's nothing to be depleted. And if there is nothing to be depleted, then the purpose of the rule does not exist, and therefore it should not be applied. And there is nothing, as I recall, and if I've overlooked something, I apologize to the court, there's nothing in the record anywhere that identifies any assets, let alone assets that are threatened with depletion. And so again, I guess there's a simple solution in the Bible, but again I apologize. If there had been a filing in a certain court, saying yes, there's this XYZ trust or something of this nature, all right, that's a different story than by a stretch of logic perhaps. We could read and say there's something being protected, but there isn't. So the Dead Man's Act would not apply there. Now, but even if the court goes beyond and overlooks the depletion aspect, all the case law that I've read talks about people coming in after someone has died with fraudulent claims. And there are as many as there are years that have gone by. Now, in this particular case, that it was laid out in great detail in the motions for summary judgment, we did a family history, so to speak, in reader's digest form perhaps, talking about the custom and habit within the families of Joseph and Lillian Beale, talking how they treated the three children and later the two grandchildren consistently in the same manner, whether it was college graduation, decorative pieces of art, diamonds and fur coat, annual gifting, and the houses. And that was all documented. And then we were very fortunate. The case law talks about we can't hear from the deceased. Well, in this case, we did hear from the deceased. Because prior to her death, after she had moved from St. Louis County, Missouri, to New York, she sent personal notes, her handwritten notes in envelopes addressed by her, her return address in New York, that, and with the court's permission, I would like to quote just a couple of those because I think they're appropriate in light of the purpose of the Dead Man's Act. And this is the voice of Lillian Beale herself talking.  But it doesn't say, and I'm going to give you money, or I reaffirm my intent to give you money. See what I'm getting at? Oh, yes, I do, Your Honor. And the thing is, we have pleaded in our case and in our brief that we intended to go forward with circumstantial evidence. We never said that, no, we had the proverbial smoking gun, but if all the circumstantial evidence under the basic rule of the definition in the court's instructions leaved only one conclusion, then that's a submissible case that should at least go to the prior fact. And that, coupled with the custom over the years of everything they did, and the other notes that you referred to, which I will not quote to the court, is totally consistent with the position of the promise made to Plaintiff by her mother in saying about this money. And we think this is important when you apply the Dead Man's Act, because if you ultimately come around after reasoning step by step that the fraud issue, there is nothing, nothing, Your Honor, in this case, like this, the opposite, to even remotely or theoretically suggest an inappropriate claim. And that's the point of laying out all of this. Before she moved, after she moved, there's nothing there. So what basis does someone have for coming into court and saying, this is an illegitimate claim, it's just a greedy child, et cetera. It's not there. And by saying it's not there, I mean there are no facts that say that. There are no facts that contradict anything that we have laid out. What makes that doubly interesting, I think, is that there are two people, Plaintiff's brother, Plaintiff's sister, brother lives in New York, Plaintiff's sister lives in Michigan, who know if this is untrue. If it is untrue, if it is a false claim, if everything the plaintiff is saying isn't true, the defense, whoever they represent, had available the possibility of affidavits from two people who could have come in and said X, Y, and Z, that our sister had just made this up, a miserable person her entire life, et cetera, et cetera. It didn't happen. And we think, to use the old argument to a jury, it stands unchallenged, uncontradicted, undisputed. And we think that is important. Again, with fear of being unsophisticated, let me emphasize to the court, there are no facts to support anything the defendant is claiming, whoever the defendant is. Let me ask a question, Mr. Hudnick. On the current state of the record, let's say this case went back, went to trial, and you got a verdict, a judgment. Who would you collect that from? I know where the money is. Pardon? I anticipated that, Your Honor. Well, I mean, at this point, the defendant, at least on the face of it, is who? Well, we've been asking, well, thank you, Your Honor, we have been asking that question. It's not the estate of Lillian Beal, or is it? Well, we, I'm trying to find how to word this, but from our due diligence, we have a pretty good idea what the certified records of the probate court, surrogate court, in New York are going to say. We, from our due diligence, I know where it will be satisfied and how it will come about. That's the only way I can answer the court at this time. Well, I mean, you keep qualifying your argument consistent with what you've alleged in your brief. Yes. That, you know, whoever the defendant is. The thing is this, Your Honor, and as I'm coming to the matter of the summary judgment, these are matters that should have been ironed out in circuit court. I ought not to be up here in the appellate court of the state of Illinois asking questions like that. The record should have been clear, so the issues could have reasonably been defined, so that if there is to be an appeal or further, whatever, we know what they are. But because of the way it was handled in the circuit court, which then brings us to summary judgment, which we all know is a very drastic record. Well, let me ask you what the record will reflect that you argued or whatever at the time. When Mr. Watkins was named substitute party, will the record reflect that you said, no, wait a minute, this has to be somebody who's representing the estate, or, I mean, is that all pretty clear in the record? I was so happy, Your Honor, to have anybody, and I'm probably going to get in trouble in about three seconds, because I don't know how else to say it and drive home my point. Considering how long it took, I'd have been happy for a cocker spaniel to be named as a substitute anything so the case could go forward. Now, again, I apologize. But we came up here the first time. And there's no reason, and now we're back, and we still can't get a substitution. But my question is, what does the record reflect about whether you objected to the way it was done? We were happy to get them. You did not object. I would be less than candid if I didn't say to you that in the back of my mind, the case had been going with Judge Brandon, that I wasn't at least considering trying to build in reversible error in case we encountered the same type of thing after it came back as we had encountered the first time. Now, if this gets me in trouble with the ARDC, I will accept my sanction. But the point is, in order for the case to go forward, we had to get somebody in there. Now, he just said substitute. But, again, once it was in, even if we agreed, once it was in, his status as whatever he was to raise the Dead Man's Act becomes a different issue altogether. And there's nothing in the case law, nothing that I found, that says he fits in to that definition or that role because there's no entity involved, no depletion, no fraud, nothing. And if you take away from this case the Dead Man's Act, you have nothing for the defense because that brings with it the question of standing on the part of Mr. Watkins. And if Mr. Watkins does not have standing, then he doesn't have the right to raise anything. And the issue of standing, again, is so complicated, this court could look into standing and things like that, like jurisdictional courts, it makes its own determination. It's taken me a week to develop this goal and it's difficult giving it up. And since he has no standing, no nothing, he can't even challenge our basic promissory estoppel, which is sufficient. And the reliance on a daughter, relying on a mother and all of that. And so we think that there's more than enough that Judge Brandon most certainly did not have. Brandon's summary judgments aren't to anybody because clearly there are issues, major issues. And for that reason, we think the case should be reversed. The court can enter judgment. The plaintiff are sent back with directions and that would be fine. Thank you. Thank you. Good morning. May it please the court. Mr. Huntley. This whole issue of the Dead Man's Act and the standing is a smokescreen. If you want to look at the case, the reason that we're here and this smokescreen exists is because plaintiffs cannot meet the fundamental elements of the plaintiff's promissory estoppel. Even if you, for the moment, assuming argument that all the evidence comes in under the Dead Man's Act, the plaintiff still can't meet her obligation. And that's the fundamental problem that we have here with this case, is that the plaintiff cannot prove the two elements of the promissory estoppel claim. First, non-ambiguous promise. Second, reliance. And that's really the heart of this case and that's clearly what Judge Brandon saw. What we have to remember is the context in which this arose. Plaintiff filed a motion for summary judgment. There was extensive briefing right around the time of the hearing on the plaintiff's motion. Defendant filed a motion for summary judgment. All of this is happening within the space of about a month. At that same time, the plaintiff's deposition is taken. Okay? So we have, essentially, cross-motion for summary judgment. And there were hearings. There was a hearing held on the plaintiff's motion. And at no point could the plaintiff make her case as it relates to the two elements of the promissory estoppel claim when she was making her own case. Let's look at the evidence. There are interrogatory responses. What, if any, specific steps, actions, or conduct did the plaintiff engage in relative to her alleged reliance on the promise to make a gift to the plaintiff? The plaintiff replied, none. In her deposition, it was taken while her motion for summary judgment is pending. Okay? It's important that that is taken while the actual motion is pending. It was taken on February 19, 2010. There was argument on the defendant's motion for summary judgment. No, sir. There was never any argument before the court on either motion. No. On the plaintiff's motion, there was. On February 9, there was argument on the plaintiff's motion. I've got it reversed. Okay. That's what I meant to say. But at all times, the same issues were addressed. And the record will reflect that there's two issues. So the court heard argument. Right. Exactly. The plaintiff and the promissory stop. Right? The plaintiff asserts in their motion for summary judgment, we're entitled to summary judgment. Presumably, you can satisfy those two prompts. In her deposition, it's taken. Did you look at any houses? Yes. Okay. Did you go in there? Yes. Did you put any money down? No. Did you put your house up for sale? No. Did you write any contracts, either contingent or any other method? No. So the court can, in my mind, stop its analysis right there. There's clearly no detrimental remarks. That has nothing to do with the Dead Man's Act. It's all about what the plaintiff's evidence would be. Okay. So I think the court can stop its analysis right there and say, Wait a minute. Clearly, this is what Judge Brandon saw. Can't establish the second element of the promissory stop. Let's look at the first element. I'm not ambiguous about it. As you noted, Your Honor, that note comes far from saying, I'm going to give you $300,000. Are we still assuming arguendo that the Dead Man's Act doesn't apply? Right. So then we've got the testimony that's out of conversation. Let's assume it all comes in, right? Okay. There's no evidence from the plaintiff. Even if she gets to sit on the witness chair and say, It comes in. My mom made me this promise. Okay? It still doesn't rise to the level, if you go to the custom and habit that Mr. Hutnick would like you to believe, the rule of threes. The rule of threes relates to houses. It's very interesting. It's not a gift. It's not a gift. It's a loan. In support of the record filed by Mr. Hutnick, there is a mortgage for $100,000 for the one brother, a mortgage for the sister for $140,000. Now, I don't know much about real estate, but there's a vast difference to me between a gift of $300,000 and a mortgage of $100,000 and $140,000. Now, to me, even if you accept that this is the custom and practice in the family, which I don't think the evidence that they've offered would demonstrate that, but let's accept it all. A flat-out gift of $300,000, which is what the prayer is asking for, doesn't match what they say the evidence supports. Okay? So there's two elements of their claim that are unsupported. The only two elements of the claim are the promissory stuff. It's pretty simple. And that's the only theory. That's the only theory. It's a very simple complaint if you look at it. It's very, very simple. Okay? All this other stuff about the Dead Man's Act and a hearing is a smokestream because he can't – and let's talk about the number of times he's had – the plaintiff has had to address it. She had her own motion for Trump re-judgment, correct? She had – at the hearing, she filed two briefs, I think on February 11th, in support. And then we have our hearing. At the hearing, and then we have further briefings she submits on February 25th. Okay? So there's five opportunities for the court – for the plaintiff to present to the trial court. Then we get to the appellate court. It's missing from the appellate brief. Okay? We pointed out in our appeal – in our appellate brief that it's still missing. Meanwhile, the plaintiff goes to great lengths to tell you about the evidence that they would present as it relates to the standing with Mr. Watkins. Let's assume everything that they put in there is – that they couldn't prove everything that they say they – is in all their briefs ever. They still haven't addressed this issue. In fact, we have her direct testimony saying she did not detrimentally arrive. So she has had six or seven or eight opportunities, including this morning at our oral argument, to present the essential elements of why her claim should stand. And she simply has not done that. The plaintiff has not made her case and cannot make her case by her own testimony. Sworn interrogatories and deposition. I mean, that's pretty tough to overcome, I would think. Okay? And it's – there – you know, in the issue of the judge not holding the hearing, you know, there were hearings and briefings. It was in the same issues over and over and over. Okay? Dennis Watkins was appointed in early January. Let me ask you about that. I mean, your caption says, Dennis Watkins, substitute party for civilian appeal. What does that mean? Well, if you look at this court's Rule 23 order, and the plaintiff's own motion for appointment, it's pursuant to the special administrative statute. So to say it's – to say it's not – Does it say that somewhere in the record? I mean, is it – did the court say that? Well, if you look at this court's Rule 23 order, yeah. And it clearly says it's – I've got it right here. It's in there. And the plaintiff's motion, which was filed – Well, I mean, basically the case came up. We said you've got to substitute party pursuant to the statute. Pursuant to the statute, right. The statute says if there's a personal representative of the estate, that's who gets substituted. Right, and in this case, in Illinois, there is no personal representative. Okay. And exactly, the statute does say here, it says, and no petition for letters of office for his or her estate have been filed. That's the case here. Okay. And this case came up to the appellate court, and the appellate court said, this court said a special administrator should be appointed pursuant to 520. It would be a little clearer if it said special administrator, or if there was an appointment that he was special administrator, or something like that, instead of substitute party. Well, he had been serving as guardian in life prior to her death. Right. Okay. So she dies, and, you know, some time passes, and then she, you know, the court did not surprise me, frankly, denies the motion to substitute the party. And we come up here, and I think rightfully the court says, you've got to have a – before you can proceed, you have to have a party. Okay, well, let me just ask you here on the record the same question I asked Mr. Hudnick. Let's say he got a judgment against Dennis Watkins in this case. What does that mean? Well, I think he would not have anybody to collect it against, because part of the statute says it only applies to proceeding as a policy of insurance. Right. I mean, there's an argument in my mind whether or not we should have just let this case go to default and let him have a judgment. But because of, you know, there's a long and meticulous history that maybe isn't reflected in the entire court file, but it's sprinkled through some of Mr. Hudnick's plea. You know, there's been a long, litigious history that the parties have been battling this issue and many other issues for years. This isn't the first time this case has been here. In this proceeding or others. I mean, you know, it's been here on personal jurisdiction issues over one of the brothers. So there is a long, tortuous history between the parties. I believe that he would have nobody, even under this theory, to proceed. The estate in New York was open. Mr. Hudnick had notice of it. It closed. And, you know, no claim was made for reasons that I don't know why. So, you know, I think all of this issue, all of these issues, the court is a gatekeeper of its own evidence. And it's not an issue of whether or not Mr. Watkins could raise the issue. The court has an obligation to determine what evidence comes in or not, particularly at the summary judgment stage. You know, it's both the finer fact at the summary judgment stage and the decider. And so, you know, the issue, the court can apply the Dead Man's Act or not. And, in fact, at that summary judgment hearing, the one on, I think it was February 11th, Mr. Hudnick conceded, and he stated, if a police court plaintiff is willing to concede that if her case was based entirely on one conversation with Illinois, with Lillian Beal, the defendant, then the Dead Man's Act would be dispositive. In her own motion for summary judgment, she has acknowledged the application of the Dead Man's Act. She is trying to go around it by saying that we have other evidence, okay? And this other evidence is the rule of threes that we talked about. These letters that you note don't say anything about a promise. You know, the core of this issue is, even assuming argument that all this evidence comes in, they still can't make their case. I believe that this case is exactly the type of case that the special administrator was intended for. If you read the case of Gabby D. Schulte, which is cited in our brief, there's part of it that says, you know, acknowledges that there are times when family members may not want to be a part of the litigation. And the special administrator that was appointed in that case was trying to get out of it. Was trying to get out of the appointment. It was some court administrator. And she was saying it was improper. And the court noted in dicta, albeit, that family members sometimes don't want to be involved in lawsuits. And that the statute, you know, there's no letters of administration open to Illinois. So clearly, you know, the statute, the court, this court, filed a divide and ordered Judge Brandon to appoint one pursuant to the statute. The plaintiff filed a motion for it to be, for an appointment of a special administrator pursuant to the statute. And Judge Brandon ordered it. Now, because the order doesn't say it is of no effect, because the underlying pleadings in the court order, you know, they clearly, it was not shown to the statute. What you're saying is we shouldn't construe it that way. Well, yes. You know, it doesn't, in this case, say that. Well, and this court's mandate directed it. Well. If you look at the purpose underlying that statute, it is directly on point for this type of situation. Well, in Rule 23, we cite the statute, and then in the end, we say we hold, therefore, that the plaintiff's cause of action for promissory estoppel survived Beal's death, and that the circuit court erred in denying her motion for a substitution of party. Right. So I guess we got exactly what we suggested. And that's what I, and that's why. The caption says substituted party or whatever. Right. And the underlying pleadings all cite to the statute. So to say something else would be a real stretch. And so, you know, the purpose of this statute, as in the case I cited, Gabby B. Schulte, is to permit litigation to proceed without requiring that a probate state be open or that a formal executive or administrator be appointed in the process. And that's a direct quote from Gabby B. Schulte, which is a Fifth District case. Okay. So we have exactly what is supposed to happen happens. Okay. And I believe that the issue is not whether or not Mr. Watkins had standing. I think the issue should be framed a different way. I think it's whether or not it applies to this case. You know, it's not an issue of standing. The court determines whether evidence is admitted. It can determine whether or not it's raised or not by Mr. Watkins. It is, you know, you are the gatekeeper of evidence. And certainly I think it applies to this court on a date over to review that you, you know, here determine whether or not the Dead Man's Act applies or does not apply. And I think that it does because, you know, as Mr. Putnick read to you, you know, the statute calls for the appointment of a special administrator. Within the meaning of the Dead Man's Act, Section B, a representative is defined to mean an executive, comma, administrator. Okay. On its face, it applies. It's a stretch to say that it doesn't apply. You know, he said in all the case law. We didn't cite you in any case law that it does apply. You know, there is, on its, on the plain reading of the statute, it does clearly apply. And courts have been, you know, liberal in its construction, looking at the, I think it's Eidelman v. Raymer case, where a devisee not expressed included in the statutory definition was allowed to raise the Dead Man's Act or was applicable there. So, you know, it's a real stretch to say that the Dead Man's Act doesn't apply. In fact, I believe it to be this particular type of case where it should apply, where a claim is at issue, a promise of, to pay money, and there's not a single other corroboration of it, excepting the, you know, excepting the statements that were made allegedly to the plaintiff and her husband, slash, attorney. Okay. I mean, this is the type of case where then you can't just come in and say, oh, they promised to give me money. That, I mean, this is... Well, and I think Mr. Hutton concedes that if, but for his argument about whether or not Mr. Watkins is a proper party to assert the Dead Man's Act, that certainly the Dead Man's Act would apply. Right. Well, and I think he has conceded an argument in his motions and maybe even today. So it just begs the question of, you know, why are we here? And it comes back to, you know, the plaintiff had ample opportunity to present all of these issues, including the objection to Mr. Watkins. If the plaintiff had an objection to Mr. Watkins, why did we have five briefs filed by the plaintiff? Why did we have a hearing? Why didn't we have a motion to challenge that appointment? He acknowledged that he did not object to the appointment of Mr. Watkins. So there's no real issue as to whether or not Mr. Watkins is in the case or proper. You know, the plaintiff had, and whether or not, you know, today in his briefs he argues that he didn't have the opportunity to raise this issue of standing before the trial court. Clearly he had many numerous opportunities to raise it. But push all that aside for a minute and get back to where I start, which is the plaintiff cannot make her case by her own words, by her own testimony, interrogatory responses. You know, the court is reviewing this. They don't, you know, and there's no, any failure to have a hearing by Judge Brandon, that's just harmless error because all these issues were already discussed. You know, it's just, it's time for this case to be over. It's been going on since 2000. And we've been out here, we did what the court asked, and now the plaintiff can't make her case and is trying to direct it via smoke screen to something else. The evidence isn't there. You know, the expense will drag on, we'll be back here, and this court has the ability on a day and hour review to determine that the evidence simply doesn't support the plaintiff's claim and in fact supports the evidence or the claim for summary judgment by the defendant. All right, thank you, Mr. Fair. Mr. Hutnick, any rebuttal? Yes. Please, Governor, may I quickly clarify a point that all the sentences were not read by learned counsel. I did concede to the judge that if our only fact was that conversation and we had nothing else, yes, we would be dead in the water. No pun intended, absolutely. But that is not the type of argument because we went through all of everything else. One of the issues before the court on summary judgment and nothing else is that Judge Brandon, in making his decision, whatever the basis, he considered the matter of the Dead Man's Act. We don't know because there were no findings of fact or conclusions of law offered by the court to what extent how we weighed it. I don't think now suddenly a defendant would come up and say, well, set that aside. We have to assume that Judge Brandon considered it, and if he did and it's inappropriate, then on that basis alone he should go back with directions. On the issue of standing, again, the cases that I've read, someone that has standing, even to come into court, whether their arguments are good, bad, or something in between, has to have some interest that is being protected or sought to be protected. You've not heard anything from the defendant about that. Who are they protecting? What are they protecting? If there's nothing being protected, they don't have a right to be here. It's similar, I believe, Your Honor, to matters of jurisdiction. You can make a brilliant argument, but if there's no jurisdiction, it's an academic exercise and we all go home feeling good about ourselves. But if they don't have anything to protect, it's an academic exercise, then you've got a lawsuit against them. And then we win. Let us win. I argue for the right, if we get the judgment, to fail, because I don't believe, pardon my arrogance, I'm satisfied we will succeed afterwards. Now, in that connection, a reference was made to Watkins having served as a guardian ad litem earlier. Several years earlier, an order was entered appointing Judge Dennis Watkins as guardian ad litem for the sole purpose of going to Rochester, New York, and determining if Lillian Beal was competent. We had raised that. We had opposition to that, even though it was clear to all concerned that the lady who had been incompetent prepared to talk. And that was only his role. It was not anything else. And there certainly was no carryover, no perpetuity type thing. And his reference to the mortgage, well, if there was a trial, we would go into all of the gifting and the mortgage and how the family did things. But what it comes down to, they don't have a right to be here because of standing. And if they don't have a right to be here, then it doesn't make any difference what they said. And if they're comfortable with just let it come back if it doesn't be entered, okay, I'm very happy with that. And the case goes away. And then they don't have anything to worry about if they're not protecting anyone's interests. But I submit to the court respectfully, they are. And that's part of the problem that should be addressed in the circuit court. And I thank the court for its consideration. All right. Thank you both for your briefs and your arguments. So we're going to take the matter of Hutkins v. Watkins or Hutnick v. Watkins under advisory.